IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANJENAI BOLDEN, M31931, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 18-cv-2197-DWD |
| | ) |
| MICHAEL N. MEZO, and | ) |
| JEFFREY L. STALLINS, | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Anjenai Bolden, an inmate of the Illinois Department of Corrections (IDOC) currently incarcerated at Big Muddy River Correctional Center ("Big Muddy"), brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while at Big Muddy in 2018[1]. Plaintiff's sole claim is that Defendants Michael Mezo and Jeffrey Stallins failed to protect him after he complained that his cellmate harassed him, and eventually threatened him. Defendants filed a Motion for Summary Judgment (Doc. 35) on the issue of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). Plaintiff opposes the motion. (Doc. 50). On February 15, 2022, the Court conducted a hearing on the Motion for Summary Judgment via Zoom.

---

[1] Plaintiff has been transferred to a few different IDOC facilities from 2018 to date, but he is currently back at Big Muddy.

## BACKGROUND

Plaintiff filed his complaint on December 20, 2018. (Doc. 1). Upon initial review, the Court identified only one claim to proceed:

> Count 1: Eighth Amendment claim against Defendants John Doe 1 and John Doe 2 for failing to protect Plaintiff from the serious risk of harm posed by Inmate Lenoir at Big Muddy in February of 2018

(Doc. 7). Two other claims—one concerning excessive force, and one concerning the deprivation of personal property—were dismissed for failure to state a claim. (*Id.*) On August 21, 2019, Plaintiff moved to substitute Defendant Mezo for John Doe 1 and Defendant Stallins for John Doe 2. (Doc. 20).

## FINDINGS OF FACT

### *The Pleadings*

Plaintiff alleges that on February 16, 2018, he was assigned to live with Inmate Lenoir as an "attendant," because Lenoir was legally blind and wheelchair bound. (Doc. 1 at 7). He alleges that from the very first day he was having problems with Lenoir. Specifically, he claims that on the first day he found Lenoir watching his TV, so he told Mezo and Stallins "and they all thought it was very funny and they laughed at me." (*Id.*) Plaintiff further alleges Lenoir became very rude and disrespectful, so he sent request slips to Mrs. Camron to be reassigned. "I also wrote a grievance, but I never heard anything back or got the grievance back in the mail." As the situation progressed, Plaintiff claims that Lenoir would curse him out and threaten to kill him.

Plaintiff alleges that the situation worsened on February 22, 2018, when he was tasked with meeting Lenoir in his wheelchair to help him return to their shared cell.  Back at the cell, Lenoir allegedly told Plaintiff that "[t]his is your last warning, that if you try to help me again I will kill you."  Plaintiff immediately reported the latest threat, which ultimately set off a chain of events that led to Plaintiff moving to another cell on February 22, 2018.  During the February 22 events Plaintiff alleges that Lenoir falsely accused him of sexual assault, and then while he was away from the cell for investigation of the sexual assault allegation Lenoir stole his personal property, but claims related to the stolen property have been dismissed.

In the Complaint, Plaintiff alleged that he had fully exhausted his administrative remedies as to the claims presented in the lawsuit.  To demonstrate exhaustion, Plaintiff attached a February 26, 2018 grievance wherein he complained that after Lenoir falsely reported a sexual assault on February 22, 2018, Lenoir stole many items of his personal property.  (Doc. 1 at 17-18).  The documents Plaintiff submitted show that the February 26, 2018 grievance was fully exhausted at the institutional level, and that on May 26, 2018, the Administrative Review Board affirmed the outcome of the grievance.

Defendants agree that the February 26, 2018, grievance was fully exhausted, and they attached copies of it to show the same.  (Docs. 36-4 at 2-5).  Defendants also attached a grievance log from the Administrative Review Board (ARB), showing that Plaintiff exhausted the February 26, 2018 grievance.  (Doc. 36-4 at 1).  The ARB log does not reflect any other February 2018 grievances.

In support of his response to summary judgment, Plaintiff filed a November 21, 2021 affidavit wherein he alleges:

> On the date of February 17, 2018, I wrote a grievance to the grievance officer to forward to the chief administrative officers marked emergency because inmate Lenoir told me that he did not want me to be his live in attendant and he showed me papers that he possess authorization to choose who he wants to be his live in helper. On the above date, I w[]ent to the bubble (Interlock) to talk to Officer Mezo & Officer Stallins about the incident.  I inform them that inmate Lenoir had been threatening me both officer Mezo and officer Stallings laughed at me and said to me "what, you some sort of coward, sisy, yella! You can't handle a guy in a wheelchair who's blind"! Look, it's nothen we can do for you. Because this is your job assignment, you have to stay in there and help him rather he likes it or not or refuse housing." So I wrote a grievance and marked it emergency on all the above, but I never received a copy or response to my grievance while I was waiting on that, on the date of February 22, 2018, I ran to the bubble to talk to officer Mezo and Officer Stallins because this time Lenoir had jumped up out of his chair and looked strait at me telling me that he is going to kill me.

Doc. 50 at 6.  Later in the affidavit, Plaintiff again discusses the February 17 grievance, alleging that he told another guard about it.  Specifically, he alleged "I also informed Lt. Clark that I wrote in my grievance that officer Mezo and Stallins laughed at me and called me names and told me that I must refuse housing in order to get help." (*Id.* at 8). Plaintiff further claims that he appealed his February 17 grievance to the ARB in May of 2018[2], but got no response.

In addition to the affidavit, Plaintiff tendered two letters that he alleges he wrote to the Director a Springfield on March 8, 2018.  One letter addressed the February 26, 2018 grievance.  (Doc. 50 at 9-10).  The other letter addressed the alleged February 17, 2018

---

[2] Plaintiff wrote a date in 5/XX/2018 format, but he scribbled out the middle date numbers, so it is difficult to tell exactly what he meant.  He might have meant to write May 1, or May 4, 2018.  At the hearing he testified he corresponded with the ARB about the February 17 grievance on May 4, 2018.

grievance. He wrote that the grievance contained a request for a new job, as well as a report of Mezo and Stallins ignoring him and making fun of him. (*Id.* at 11-12). He alleges that he submitted the grievance as an emergency but got no response so he decided to appeal to the ARB.

Aside from the affidavit and letters, Plaintiff submitted 30-pages of other administrative and grievance documentation. Of relevance, Plaintiff alleges in the documentation that during a transfer from Big Muddy to Graham Correctional Center some of his legal documents were either lost or taken as a form of retaliation. (Doc. 50 at 31). He does not specifically allege that he had copies of grievances that were lost.

*The February 15, 2022 Hearing*

At the February 15, 2022, hearing, the Defendants' called one witness—Adewale Kuforiji—an ARB Chairman. Kuforiji testified that he was aware of only one grievance pertaining to this lawsuit—the February 26, 2018 grievance. He testified that the ARB keeps a log of grievances being appealed, and that the log does not reflect any other grievances relevant to this lawsuit. Kuforiji further testified that the ARB does not review standalone letters because letters are inadequate to exhaust a grievance.

Plaintiff testified on his own behalf. He stated that on February 17, 2018, he filed an emergency grievance about Defendants Mezo and Stallins conduct towards him. He alleged that he never received a response to that grievance, and he did not have a copy because he submitted the original copy to the institution. He alleged that he sent the ARB a letter about that unanswered grievance on March 8, 2018. He also alleged that in May of 2018 he corresponded with the ARB about the February 17 grievance. He

alleged that he did not receive receipts from the ARB for his correspondence with the board.

## CONCLUSIONS OF LAW

A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). After hearing evidence, finding facts, and determining credibility, the court must decide whether to allow the claim to proceed or to dismiss it for failure to exhaust. *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). The court is not required to conduct an evidentiary hearing if there is no genuine dispute of material fact, and the determination is purely legal. *See e.g., Walker v.*

*Harris*, 2021 WL 3287832 * 1 (S.D. Ill 2021); *Miller v. Wexford Health Source, Inc.*, 2017 WL 951399 *2 (S.D. Ill. 2017).

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d at 740. "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). The regulations first require an inmate to file his grievance with his counselor within 60 days of the discovery of an incident, occurrence, or problem that gave rise to the grievance. 20 ILL. ADMIN. CODE § 504.810(a). Administrative regulations require the grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). If the names of the individuals are unknown to the offender, he can still file the grievance but "must include as much descriptive information about the individual as possible." *Id.* Further, the Seventh Circuit has held that an inmate is required to provide enough

information to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).

If the complaint is not resolved through the counselor, the grievance may be submitted to a grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (CAO). 20 ILL. ADMIN. CODE § 504.830(e). The CAO then provides the inmate with a written decision on the grievance. *Id.*

If the inmate is not satisfied with the CAO's response, he can file an appeal with the IDOC Director through the Administrative Review Board (ARB). 20 ILL. ADMIN. CODE § 504.850(a). The ARB must receive the appeal within 30 days of the date of the CAO's decision. *Id.* The inmate must attach copies of the responses from the grievance officer and CAO to his appeal. *Id.* The ARB submits a written report of its findings and recommendations to the Director, who them makes a final determination. 20 ILL. ADMIN. CODE § 504.850(d), (e).

An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. 20 ILL. ADMIN. CODE § 504.840. If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance. *Id.* If a grievance concerns protective custody, a plaintiff is allowed to file that grievance directly with the ARB. 20 ILL. ADMIN. CODE § 504.870(a)(1).

B. Analysis

Defendants contend that the only fully exhausted grievance—the February 26, 2018 grievance—did not contain factual allegations relevant to the failure to protect claim, so the February 26 grievance does not satisfy the exhaustion requirement. Defendants are correct that in order to exhaust a claim, a grievance must provide facts that make it clear an inmate is complaining about specific conduct of a particular individual, even if that individual's name is unknown. *Roberts v. Neal*, 745 F.3d 232, 235-36 (7th Cir. 2014). In the February 26 grievance, Plaintiff does not discuss Mezo and Stallins alleged failure to protect him. The sole focus of the February 26 grievance is lost property. Accordingly, the February 26 grievance is not sufficient to exhaust the failure to protect claims as to Mezo or Stallins.

Plaintiff counters that he should be allowed to proceed beyond summary judgment on exhaustion because he filed another grievance—a February 17, 2018 grievance—about Mezo and Stallins' failure to protect him. Plaintiff does not possess a copy of this grievance. In his complaint he mentioned an emergency grievance in February that was not returned concerning Lenoir using his TV without permission, and Lenoir being rude and disrespectful. (Doc. 1 at 7). He alleges that in response to these concerns Mezo and Stallins laughed at him, so he filed a request slip to have his job reassigned and a grievance. It is not clear from the complaint what the exact contents of the grievance was or who it was written about.

In response to summary judgment, Plaintiff filed an affidavit and a letter he alleges that he sent to the ARB about the alleged February 17 grievance. (Doc. 5 at 6-8). Plaintiff

discussed the alleged February 17 grievance at the hearing and he also discussed the March 8, 2018 letter that he alleges he sent to the ARB.  In the affidavit, Plaintiff alleges that he wrote an emergency grievance on February 17 either before or after talking to Mezo and Stallins about Lenoir's open disdain for Plaintiff as his aid.  Plaintiff reiterated at the hearing that his February 17 grievance concerned his interaction with Mezo and Stallins.  In the affidavit, Plaintiff alleges that in May of 2018 he appealed the February 17 grievance to the ARB.  At the hearing Plaintiff alleged that he wrote to the ARB about the February 17 grievance on March 8, 2018, and on May 4, 2018.

Along with the affidavit, Plaintiff included a letter that he alleges he sent to the ARB on March 8, 2018 concerning his February 17 grievance. (Doc. 50 at 11-12).  In the letter he discusses the alleged contents of the emergency grievance but he does not ask for any relief or assistance.

The record does not contain a copy of the alleged February 17 grievance, or of Plaintiff's appeal to the ARB concerning the grievance.  By contrast, the record contains a grievance log from the ARB that shows the February 26, 2018 grievance, but does not show an appeal of the February 17 grievance.  By Plaintiff's allegations, the ARB should have had record of the February 17 grievance either because of his March 8 letter, or because he appealed it in May of 2018.  The only evidence of the alleged February 17 grievance is Plaintiff's own allegations that it existed.  ARB Chairman Kuforiji credibly testified that the ARB did not have record of an appeal of a February 17 grievance, and the ARB would not have considered other standalone correspondence because it would not have been sufficient to appeal a claim from the institutional level.

Assuming arguendo that the February 17 grievance existed, there are a few problems with it in terms of exhaustion. Although Plaintiff may have written to the ARB about the 'lost' grievance on March 8, 2018, he does not allege that he actually appealed the grievance until May of 2018. An inmate only has 30 days to appeal to the ARB. A May appeal of a mid-February grievance, that went completely unanswered, is too late. Additionally, Plaintiff has never made it clear that the contents of the grievance exhausted his claims against Mezo and Stallins. Plaintiff admitted at the hearing that he has no concrete proof of the contents of the alleged February 17 grievance. He suggests in some pleadings that he filed a grievance asking for a new work assignment after talking to Mezo and Stallins, but such a grievance would not exhaust a failure to protect claim. Even if Plaintiff grieved his interaction with Mezo and Stallins on February 17, at that point he had only been living with Lenoir for a single day, and it is not clear any real threats had occurred at that point. The mere allegation that Mezo and Stallins laughed at him, even if it was in the February 17 grievance does not exhaust a failure to protect claim. Weighing the evidence in Plaintiff's favor, he simply has not demonstrated that he had a February 17 grievance, or that if he did it adequately raised the claims against Mezo and Stallins. The Court finds that there is not sufficient evidence in this case to show that Plaintiff ever filed a February 17 grievance, or that if he did, he adequately exhausted it. Even if such grievance existed and was sufficient, Plaintiff's claim still fails.

As of February 17, Plaintiff had only lived with Lenoir for a single day. He does not clearly allege that threats of physical harm began from Lenoir until a few days later on February 22, 2018, when he ran to the bubble and told Mezo and Stallins that Lenoir

threated to kill him.  On February 22, 2018, prison officials investigated the situation, and Plaintiff was eventually moved to another cell.  Even if Plaintiff completed exhaustion as to Mezo and Stallins with his February 17 grievance, his allegations do not show that Mezo and Stallins violated his constitutional rights.

To state a claim for failure to protect, a plaintiff must establish: (1) that he was incarcerated under conditions posing a substantial risk of serious harm and (2) that the defendants acted with deliberate indifference to his health or safety.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  A "failure to provide protection constitutes an Eighth Amendment violation only if deliberate indifference by prison officials to a prisoner's welfare "effectively condones the attack by allowing it to happen." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010)[3] *citing Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997).  To satisfy the first prong, that an inmate is incarcerated under a serious risk of harm, an inmate must show "that he or she experienced, or was exposed to, a serious harm, [and] that there was a substantial risk beforehand that serious harm might occur." *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005).  A generalized fear of harm absent a tangible threat or a high likelihood of serious harm is not sufficient to state a failure to protect claim. *Wilson v. Ryker*, 451 Fed. Appx. 588, 589-90 (7th Cir. 2011) (district court was correct to dismiss a failure to protect claim where inmate claimed of general fear from past violence and being celled with inmates of different races or gang affiliations).  As to the second prong, "a prison official must respond reasonably to a known risk of harm, but negligence

---

[3] Finding that the district court properly dismissed a claim of failure to protect against a guard and warden because the plaintiff did not adequately allege that they had actual knowledge of a serious risk of harm and where harm arose an entire year later. *Id.* at 756.

or even gross negligence is not enough to show a constitutional violation." *Giles v. Tobeck*, 895 F.3d 510, 513 (7th Cir. 2018). The official must act with such disregard that his or her conduct "effectively condones the act." *Id.*

A failure to protect claim typically arises if an inmate has suffered some actual injury. In fact, the Prison Litigation Reform Act ("PLRA") provides that "[n]o Federal civil action may be brought by a prisoner…for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e. There are exceptions for prisoners seeking injunctive relief, *Farmer*, 511 U.S. at 845, or if the prisoner did not sustain harm but the risk of harm arose due to the malicious or sadistic intent of an official, *Babcock v. White*, 102 F.3d 267, 270 (7th Cir. 1996). "[U]nless a prisoner is challenging a failure to protect him from a serious risk of *future* harm, a claim of deliberate indifference cannot be based on a risk that never came to pass." *Henry v. Deshler*, 2021 WL 2838400 *1, *2 (7th Cir. 2021) (internal citations omitted). The Seventh Circuit recently reiterated the necessity of an actual injury to sustain a suit under § 1983. "[Plaintiff's] claim fails on the basic proposition that he has sued for damages under § 1983 and alleged a constitutional tort (an Eighth Amendment violation) without developing evidence of a recoverable injury." *Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020). A plaintiff cannot recover money damages absent a showing of any type of harm. *Id.*

Even if Plaintiff had fully exhausted his February 17 grievance, and the grievance had put the institution on notice that he believed Mezo and Stallins failed to protect him, the claim itself is insufficient. Plaintiff does not allege that he suffered any sort of harm,

let alone serious harm. A plaintiff cannot recover damages of any type under § 1983, if he does not establish that he has suffered harm. Thus, even if Plaintiff's claim was exhausted, which this Court believes it was not, Plaintiff has not plead a sufficient claim for failure to protect.[4]

## DISPOSITION

The Motion for Summary Judgment on the issue of exhaustion filed by all Defendants (Doc. 35) is **GRANTED**. Plaintiff's claims against all defendants are **DISMISSED** without prejudice for failure to exhaust. The Clerk of Court is **DIRECTED** to enter judgment in defendants favor at the close of this case.

**IT IS SO ORDERED.**

Dated: February 16, 2022

DAVID W. DUGAN
United States District Judge

---

[4] Although the Court regrettably did not catch this flaw with Plaintiff's claim during the first review of the complaint, 28 U.S.C. § 1915A(b) and § 1915e(2)(B)(ii) require dismissal of a complaint or any portion of it that fails to state a claim. Plaintiff's complaint fails to state a claim as explained above, so even without the exhaustion analysis, this case would be subject to dismissal.